IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02602-PAB-MEH

BRUCE ERVIN,

    Plaintiff,

v.

WILSON, D.C.,
KELLER, Health Services Adm., P.A., and
Five John/Jane Does,

    Defendants.

_____

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendant Keller's Motion to Dismiss [filed March 21, 2013; docket #28]. The motion has been referred to this Court for recommendation. (Docket #29.) The motion is fully briefed, and the Court finds that oral argument will not assist in the adjudication of the motion. Based upon the record herein and for the reasons that follow, the Court RECOMMENDS that Defendant's motion be **GRANTED**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

**BACKGROUND**

Plaintiff initiated this lawsuit pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) as a *pro se* litigant incarcerated in the Federal Prison Camp (FPC) in Florence, Colorado. Plaintiff filed the operative complaint on October 1, 2012. (Docket #1.)

**I.     Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiff in his Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) and under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff claims that he suffers severe cataract problems in both eyes and was diagnosed with cataracts while in custody at the "FCI in Bastrop, Texas." Plaintiff was examined by a ophthalmologist on March 29, 2012,[2] who recommended surgery. The recommendation was referred to the Bureau of Prison's ("BOP") Regional Office and approved on May 18, 2012. However, prior to performing surgery, Defendants John and Jane Does from Grand Prairie, Texas and Bastrop, Texas ordered Plaintiff transferred to the FPC in Florence, Colorado. When Plaintiff objected to the transfer, Defendants John and Jane Does informed Plaintiff that he would be able to have the surgery immediately upon arriving in Florence.

---

[2]This date may be incorrect, as it conflicts with the dates on which the Plaintiff claims he filed administrative grievances. *See* Complaint, docket #1 at 7.

After arriving in Florence, Defendant Keller,[3] the facility's Health Services Administrator, advised Plaintiff to notify Defendant Wilson, allegedly a facility doctor, who would make the arrangements for surgery. However, Defendant Wilson informed Plaintiff that he would need to be examined by a local ophthalmologist if and when the facility contracted with an ophthalmologist.

Plaintiff contends that Defendants knew of his "serious" cataract problem through his medical record. He states that he suffers "glare preventing [him] from seeing beyond a few feet." Plaintiff claims the degree of impairment to his sight prevents him from safely navigating the premises and performing his assigned work and exposes him to serious risks and safety problems. Plaintiff believes that because the facility has not contracted with an ophthalmologist, surgery is delayed and may never be performed.

## II.    Procedural History

Based upon these factual allegations, Plaintiff alleges that Keller deprived him of his Eighth Amendment right against cruel and unusual punishment by Keller's deliberate indifference to Plaintiff's serious medical needs. Plaintiff requests compensatory and punitive damages as relief against the individual Defendants jointly and severally, and injunctive relief against the Defendants in their official capacities in the form of an order requiring cataract surgery to be performed immediately. (*Id.* at 8.)

Defendant Keller responded to the Complaint by filing the present motion arguing the Plaintiff fails to allege that Keller was involved in any delay of medical treatment, that Keller was motived to or intentionally delayed medical treatment, that any delay in medical treatment resulted

---

[3]The Plaintiff's spells Defendant Keller's name as "Keller," but Defendant spells the name as both "Keller" and "Kellar." For purposes of this recommendation, the Court will spell the Defendant's name as listed in the Complaint and on the docket in this matter.

in substantial harm, and that any claims against Keller in his official capacity are barred by sovereign immunity.

Plaintiff responds arguing that Keller requests a more stringent legal standard for dismissal than that set forth in *Khalik v. United Airlines*, 671 F.3d 1188 (10th Cir. 2012). Plaintiff contends that he sufficiently alleges his Eighth Amendment claim, but that he requires discovery to support his claims. Further, Plaintiff asserts that the Defendants have delayed or denied treatment and, thus, are not entitled to qualified immunity. Finally, Plaintiff states that he has made no claims against a government entity, so sovereign immunity does not apply.

Keller replies that Plaintiff does not dispute Keller's interpretation of the claim against him, and assuming as true the allegation that Keller told Plaintiff he should speak with Defendant Wilson about cataract surgery, such allegation does not plausibly state an Eighth Amendment claim. Keller further repeats his arguments made in the motion. The Court is now fully advised and recommends as follows.

## LEGAL STANDARD

### I.     Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906,

909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted). The present motion launches a facial attack on this Court's subject matter jurisdiction; therefore, the Court will accept the truthfulness of the Complaint's factual allegations.

**II.     Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires

a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191 .

### III. Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor

syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id*.; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) ("we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded") (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A *sua sponte* dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## ANALYSIS

In *Bivens*, *supra*, the Supreme Court held that injured plaintiffs may bring causes of action for damages against federal officers based upon violations of the plaintiffs' constitutional rights. For purposes of analyzing Plaintiff's Eighth Amendment claim, a *Bivens* action is the federal equivalent of an action against state officers under 42 U.S.C. § 1983. *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006).

"When a defendant seeks dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge would be moot if the court lacked subject matter jurisdiction." *Mounkes v. Conklin,* 922 F. Supp. 1501, 1506 (D. Kan. 1996) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)).

**I.    Sovereign Immunity**

Plaintiff does not specify in the caption or in the "Parties" section whether he sues

Defendants in their official capacities, individual capacities, or both. However, Plaintiff specifies in his Request for Relief that he seeks monetary relief from the Defendants in their individual capacities and injunctive relief from Defendants in their official capacities. With respect to the official-capacity claim, Keller argues he is absolutely immune from liability pursuant to the doctrine of sovereign immunity.

"When an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States." *Atkinson v. O'Neal,* 867 F.2d 589, 590 (10th Cir. 1989) (citations omitted). However, it is well established that the United States is immune from suit unless it has consented to be sued. *United States v. Mitchell,* 445 U.S. 535, 538 (1980); *see also United States v. $30,006.25 in United States Currency,* 236 F.3d 610, 613 (10th Cir. 2000) (citing *Mitchell,* 445 U.S. at 538) (recognizing that a "waiver of sovereign immunity cannot be implied but must be unequivocally expressed"). Thus, federal employees, when sued in their official capacities, are immune from suit unless sovereign immunity has been waived. *Atkinson,* 867 F.2d at 590 (citing *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985)); *see also Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996). As pertinent here, the United States has not waived its sovereign immunity for constitutional torts. *See Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) (doctrine of sovereign immunity precludes a *Bivens* action against the United States or its agents acting in their official capacities).

Here, Plaintiff specifically does not seek monetary damages from Keller in his official capacity; rather, Plaintiff seeks "injunctive relief" in the form of an "order that cataract surgery be performed immediately." Complaint docket #1 at 8. Unlike claims for money damages against

federal officials in their official capacities, the doctrine of sovereign immunity does not bar Plaintiff's claim against Keller for injunctive relief from alleged constitutional violations. *Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005) (holding that sovereign immunity does not bar an action against federal prison officials for injunctive relief from alleged constitutional violations). But, to establish his entitlement to this form of relief, Plaintiff's Complaint must contain sufficient factual allegations to state a claim for an Eighth Amendment violation. *Abu-Fakher v. Bode,* 175 F. App'x 179, 181 (10th Cir. 2006) (unpublished). Therefore, to the extent Plaintiff's Complaint may be construed as seeking monetary damages against Keller in his official capacity, the Court recommends that the motion to dismiss be granted. However, the Court has subject matter jurisdiction to hear Plaintiff's claim for injunctive relief against Keller in his official capacity, but to be entitled to this relief, Plaintiff must plausibly state an Eighth Amendment violation.

## II.     Qualified Immunity

Keller also asserts he is entitled to qualified immunity on the Eighth Amendment claim against him in his individual capacity. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "It is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

Qualified immunity is designed to shield public officials and ensure "that erroneous suits do not even go to trial." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 779 (10th Cir. 1993) (citing

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow*, 457 U.S. at 806-08 (1982); *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)). Consequently, courts should address the qualified immunity defense at the earliest possible stage in litigation. *Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court has discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second – if the court concluded a right had been violated – whether that right was clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 232-35. *Pearson* instead affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, for Plaintiff's Eighth Amendment claim against Keller, the Court examines first whether Plaintiff has demonstrated on the alleged facts that Keller violated his constitutional right against cruel and unusual punishment. If the Court finds that Plaintiff's facts state plausible violations of a right, the Court will then proceed to analyze whether Plaintiff's constitutional right was clearly established at the time of the alleged conduct.

To establish a violation, the Plaintiff must sufficiently allege that (1) Keller personally participated in the challenged actions, and (2) Keller was deliberately indifferent to a substantial risk of serious harm to Plaintiff arising from his actions.

A.   Personal Participation

Personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). "To establish *Bivens* liability, a plaintiff is required to bring forth evidence that an individual defendant directly and personally participated in the purported constitutional violation." *Persaud v. Doe*, 213 F. App'x 740, 743 (10th Cir. 2007) (citing *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003), *cert. denied*, 543 U.S. 925 (2004), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 921 (2007)). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman,* 992 F.2d 1053, 1055 (10th Cir. 1993). In *Kansas Penn Gaming, LLC*, 656 F.3d at 1215, the Tenth Circuit noted that in a civil rights case asserting claims against individual government actors, "it is particularly important ... that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations" against an entire group of defendants.

The liability of a supervisor in a civil rights action "requires allegations of personal direction or of actual knowledge and acquiescence." *Langley v. Adams County, Colo.*, 987 F.2d 1473, 1481 (10th Cir. 1993) (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992)). Thus, there must be "an affirmative link ... between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise."

*Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (quotation and brackets omitted).

With respect to Keller, Plaintiff alleges: "Once arriving at the FPC [in Florence], I was informed by Defendant Keller that I should bring [the approval for cataract surgery] to the attention of Defendant Wilson, who would make the arrangements," and "There is no question that the Defendants were aware of the serious and extensive cataract condition. That is evident in the medical record." Complaint, docket #1 at 4. Plaintiff also contends that he has suffered damages as a result of the delay or denial of cataract surgery. *Id.* However, the Plaintiff fails to "link" Keller's instruction to speak with Dr. Wilson to any delay or denial of medical treatment. There are no allegations that Keller's instruction to Plaintiff led to a delay or denial of the surgery, or that Keller failed to exercise any control, direction or supervision, or that Keller should have done something different to avoid a delay or denial. Without such allegations, the Court concludes Plaintiff has failed to demonstrate Keller participated in his alleged constitutional injury and recommends finding that Plaintiff has failed to demonstrate personal participation by Keller in any delay or denial of medical treatment.

B.  Eighth Amendment

Mindful that the District Court may disagree and find that Plaintiff has alleged Keller's personal participation, the Court will proceed to determine whether Plaintiff has plausibly alleged an Eighth Amendment violation. Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee

the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)).  Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health."  *Helling v. McKinney*, 509 U.S. 25, 35 (1993);  *Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference.  *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).  The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause."  *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006), *overruled on other grounds by Robbins v. Okla.*, 519 F.3d 1242 (10th Cir. 2008)).  The Tenth Circuit established "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Horton v. Ward*, 123 F. App'x 368, 371 (10th Cir. 2005) (quoting *Sealock v. State of Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

The subjective component is met if the plaintiff demonstrates defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."  *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293).  The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment."  *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838).  This component is equivalent to "criminal recklessness, which makes a person liable when

she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)). "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the] condition." *Mata*, 427 F.3d at 755. However, "a delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" *Mata*, 427 F.3d at 751 (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)). Substantial harm includes "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

Here, Plaintiff alleges that his cataracts and need for treatment are objectively serious to warrant Eighth Amendment protection from a delay or denial of medical treatment. The Court agrees; taking Plaintiff's allegations as true, he has been recently diagnosed with cataracts severe enough to warrant a physician's recommendation for surgery. Therefore, the Court finds that Plaintiff has plausibly alleged the objective component of an Eighth Amendment claim.

However, while the Plaintiff alleges that Keller was "aware of the serious and extensive cataract condition" as "evident in the medical record," Plaintiff fails to allege how Keller's instruction for Plaintiff to speak with Dr. Wilson about the recommendation and approval for cataract surgery demonstrates Keller consciously disregarded a substantial risk of harm. Moreover, Plaintiff fails to allege how any delay in medical treatment has resulted in substantial harm. That is, while Plaintiff alleges that his "condition" causes him to "suffer glare preventing [him] from seeing beyond a few feet," which causes him to be unable "to see sufficiently to safely navigate the premises and perform [his] assigned work," there are no allegations that any delay in medical treatment has actually caused these conditions or has otherwise resulted in substantial harm to

14

Plaintiff. Thus, the Court must conclude that Plaintiff fails to meet the subjective component of an Eighth Amendment claim against Keller.

Accordingly, because the Plaintiff has failed to plausibly allege Keller's personal participation in the constitutional injury and, alternatively, failed to plausibly allege the subjective component of an Eighth Amendment claim, the Court recommends that the District Court find Keller is entitled to qualified immunity and grant Keller's motion to dismiss Plaintiff's claim against Keller.

### III.     Leave to Amend

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)). As such, in this jurisdiction, a court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon,* 935 F.2d at 1109-10. The Court may only dismiss "*sua sponte* when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [them] to amend [their] complaint would be futile." *Id.* (quoting *McKinney v. Oklahoma,* 925 F.2d 363, 365 (10th Cir. 1991)). Here, the Plaintiff has not previously amended his pleading and has not yet received guidance as to any defective allegations from the Court. Plaintiff's statements in his response brief providing additional information and allegations lead the Court to believe that some of the deficiencies found herein may be cured. Thus, because it is possible Plaintiff may cure the pleading deficiencies for his constitutional claim, the Court recommends that Plaintiff be allowed

to file an amended complaint against Keller within thirty (30) days of the District Court's Order.

## CONCLUSION

In sum, the Court finds that Plaintiff has failed to state a plausible claim under the Eighth Amendment against Defendant Keller in his individual and official capacities in this case. However, because Plaintiff has not yet had an opportunity to amend his Complaint, the Court recommends granting Plaintiff leave to amend his Complaint within 30 days of the District Court's order to correct, if possible, the deficiencies noted herein.

Accordingly, based upon the foregoing and the entire record herein, this Court respectfully RECOMMENDS that Defendant Keller's Motion to Dismiss [filed March 21, 2013; docket #28] be **GRANTED**.

Entered and dated at Denver, Colorado, this 16th day of April, 2013.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge