IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02602-PAB-MEH

BRUCE ERVIN,

      Plaintiff,

v.

WILSON, D.C.,
KELLER, Health Services Administrator,
LISA GREGORY, and
Five John/Jane Does,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Michael E. Hegarty, United States Magistrate Judge**.

      Before the Court is Defendant Kellar's Motion for Summary Judgment [filed May 13, 2013; docket #47]. The motion has been referred to this Court for recommendation. (Docket #48.) The motion is fully briefed, and the Court finds that oral argument will not assist in the adjudication of the motion. Based upon the record herein and for the reasons that follow, the Court RECOMMENDS that Defendant's motion be **DENIED**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140,

## BACKGROUND

Plaintiff initiated this lawsuit pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) on October 1, 2012, as a *pro se* litigant incarcerated in the Federal Prison Camp (FPC) in Florence, Colorado.  Plaintiff essentially alleges that he suffers severe cataract problems in both eyes and was diagnosed with cataracts while in custody at the "FCI in Bastrop, Texas."  Plaintiff claims he was examined by a ophthalmologist on March 29, 2012,[2] who recommended surgery.  The recommendation was referred to the Bureau of Prison's ("BOP") Regional Office and approved on May 18, 2012.  However, prior to performing surgery, Defendants John and Jane Does from Grand Prairie, Texas and Bastrop, Texas ordered Plaintiff transferred to the FPC in Florence, Colorado.  When Plaintiff objected to the transfer, Defendants John and Jane Does informed Plaintiff that he would be able to have the surgery immediately upon arriving at FPC Florence.  After Plaintiff arrived at FPC Florence, Defendant Kellar, the facility's Health Services Administrator, advised Plaintiff to notify Defendant Wilson, allegedly a facility doctor, who would make the arrangements for surgery.  However, Defendant Wilson informed Plaintiff that he would need to be examined by a local ophthalmologist if and when the facility contracted with an ophthalmologist.

## I.      Procedural History

Defendant Kellar responded to the Complaint by filing a motion to dismiss arguing the Plaintiff failed to allege that Kellar was involved in any delay of medical treatment, that Kellar was

---

155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

[2]This date may be incorrect, as it conflicts with the dates on which the Plaintiff claims he filed administrative grievances.  *See* Complaint, docket #1 at 7.

motivated to or intentionally delayed medical treatment, that any delay in medical treatment resulted in substantial harm, and that any claims against Kellar in his official capacity were barred by sovereign immunity.  On May 24, 2013, the District Court adopted this Court's recommendation to grant the motion to dismiss and, because Plaintiff had not yet had the opportunity to do so, to allow the Plaintiff to amend his Complaint to cure the deficiencies noted in the recommendation.  Plaintiff filed an Amended Complaint on May 13, 2013, apparently in anticipation of the District Court's order.[3]  The District Court affirmed its acceptance of the Amended Complaint on June 5, 2013.  Docket #43.  The amended pleading now alleges that Kellar, rather than Defendant Wilson, compelled Plaintiff to "run through the process all over again" to obtain approval for cataract surgery and, thus, intentionally delayed medical treatment for the Plaintiff.  *Compare* Amended Complaint, docket #39 at 4 *with* Complaint, docket #1 at 4.  Plaintiff further claims that Kellar, knowing Plaintiff had subsequently seen an optometrist in Florence in October 2012 and had been referred for cataract surgery, delayed treatment by submitting the referral to the North Central Region for approval and the referral was denied.  Docket #39 at 7.  The Amended Complaint also alleges that Plaintiff was informed by "Counselor Enderle" at the FPC Florence that he had already exhausted his administrative remedies "before arrival at" Florence.  *Id.* at 6.

Based upon these allegations, Plaintiff claims that Defendants, including Kellar, deprived him of his Eighth Amendment right against cruel and unusual punishment by Kellar's deliberate indifference to Plaintiff's serious medical needs.  Amended Complaint, docket #39 at 7-8.  Plaintiff requests compensatory and punitive damages as relief against the individual Defendants jointly and

---

[3]The Court notes that the Amended Complaint names a new Defendant, Lisa Gregory, and new claims against Ms. Gregory; however, there is no indication that Plaintiff has attempted to serve Ms. Gregory in Kansas City.

severally, and injunctive relief against the Defendants in their official capacities in the form of an order requiring cataract surgery to be performed immediately.  *Id*. at 14.

Kellar has not yet filed a responsive pleading to the Amended Complaint, but sought leave to file the present motion seeking summary judgment as to Plaintiff's alleged failure to exhaust administrative remedies.  Kellar argues that while Plaintiff may have exhausted administrative remedies regarding a grievance he filed in Texas, he has not filed any grievances against Kellar while in custody at the FPC Florence and, thus, has failed to exhaust his administrative remedies before filing the Eighth Amendment claim against Kellar.

Plaintiff responds arguing that Kellar should not be allowed to raise a "failure to exhaust" argument in a motion for summary judgment, since Rule 56 does not allow the Court to consider evidence outside of the pleadings.  Plaintiff also contends that his FPC Florence counselor, Mr. Enderle, refused to provide grievance forms to Plaintiff saying that the surgery had been already approved so it was unnecessary to start the administrative process all over again; therefore, Plaintiff claims that any administrative remedies at the FPC Florence were not "available" to him.  In that vein, Plaintiff asserts that the Tenth Circuit has held "once a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted."  Plaintiff contends that, to be required to start all over again would be contrary to the purpose of 42 U.S.C. § 1997e.

Kellar replies that, although Plaintiff may have perceived exhaustion at FPC Florence as unavailing, that does not excuse Plaintiff from exhausting his remedies.  Further, Kellar states that Plaintiff should have, at a minimum, provided notice to Kellar of a claim by filing a grievance identifying conduct in Colorado.  Kellar cites the Tenth Circuit in arguing, "[a] grievance cannot

4

exhaust administrative remedies for claims based on events that have not yet occurred." Reply, docket #53 at 5. Finally, Kellar argues that, based upon Plaintiff's previous use of the grievance process while incarcerated at Bastrop, Texas, Plaintiff knew that his counselor did not have authority to answer for the Warden (BP-9), the Region (BP-10) or the General Counsel (BP-11).

## II.    Findings of Fact

The Court makes the following findings of fact viewed in the light most favorable to the Plaintiff, who is the non-moving party in this matter.

1.      Plaintiff was incarcerated at the FCI Bastrop in Texas commencing January 27, 2005. Inmate History, April 22, 2013, docket #47-1 at 12.

2.      On May 17, 2006, Plaintiff filed a BP-9 remedy request seeking an eye examination with an optometrist. Administrative Remedy Generalized Retrieval, April 22, 2013, docket #47-1 at 14. No appeals by BP-10 or BP-11 forms were filed concerning this remedy request. *Id.*

3.      On November 23, 2011, Plaintiff filed a BP-9 remedy request seeking an annual eye examination as recommended by an optometrist. *Id.* No appeals by BP-10 or BP-11 forms were filed concerning this remedy request. *Id.*

4.      On December 7, 2011, Plaintiff met with an optometrist, Dr. Liang, who noted that Plaintiff would be referred "to ophthalmology for cataract eval." Eyeglasses Consultant Form, December 7, 2011, docket #51 at 10.

5.      On January 31, 2012, Plaintiff filed a BP-9 remedy request seeking an appointment with an ophthalmologist. Administrative Remedy Generalized Retrieval, April 22, 2013, docket #47-1 at 14.

6.      On March 15, 2012, Plaintiff filed a BP-8 form requesting informal resolution of his request

for surgery to remove his cataracts.  Request for Administrative Remedy, March 15, 2012, docket #47-1 at 21.

7.      On March 19, 2012, Plaintiff consulted with an ophthalmologist, who recommended cataract surgery.  Response to Request for Administrative Remedy, March 29, 2012, docket #47-1 at 19.

8.      On March 20, 2012, Plaintiff filed a BP-9 remedy request requesting surgery to remove his cataracts.  Administrative Remedy Generalized Retrieval, April 22, 2013, docket #47-1 at 14.

9.      On March 29, 2012, Warden Maye denied Plaintiff's March 20, 2012 BP-9 remedy request saying essentially that the ophthalmologist's report would proceed through applicable channels for review and approval.  Response to Request for Administrative Remedy, March 29, 2012, docket #47-1 at 19.

10.      On April 3, 2012, Plaintiff filed a BP-10 form appealing the warden's response and seeking "cataract surgery now."  Regional Administrative Appeal, April 3, 2012, docket #47-1 at 18.

11.      On May 8, 2012, the Regional Director responded to Plaintiff's BP-10 appeal informing Plaintiff that the ophthalmology consultation recommending surgery was pending review by the Clinical Director.  Response to Regional Administrative Appeal, May 8, 2012, docket #47-1 at 17.

12.      On May 19, 2012, Plaintiff filed a BP-11 appeal seeking "immediate cataract surgery." Central Office Administrative Remedy Appeal, May 19, 2012, docket #47-1 at 16.

13.      Thereafter, Plaintiff was informed that the ophthalmologist's recommendation for cataract surgery was approved by the Regional Medical Director on May 18, 2012.  FCI Bastrop Health Services Notification to Inmate of Medical Action/Results, May 16, 2012, docket #51 at 7.

14.      On August 2, 2012, Plaintiff arrived at FPC Florence from FCI Bastrop via the Federal Transfer Center, Oklahoma City, Oklahoma.  Inmate History, April 22, 2013, docket #47-1 at 12.

15.     On August 27, 2012, the National Inmate Appeals Administrator responded to Plaintiff's BP-11 appeal confirming that cataract surgery was approved on May 18, 2012 and that Plaintiff was transferred from FCI Bastrop to FPC Florence.  The Administrator stated, "your cataract condition will be discussed with you further by USP Florence medical staff."  Response to Central Office Administrative Remedy Appeal, August 27, 2012, docket #47-1 at 15.

16.     Plaintiff initiated this lawsuit on October 1, 2012.  Complaint, docket #1.

17.     On October 3, 2012, Plaintiff was seen by S. Clough, OD at FPC Florence for his cataracts. Dr. Clough noted that Plaintiff was "to be referred for cataract surgery and IOL placement OS followed by OD."  Medical Record, October 3, 2012, docket #51 at 11.

18.     On March 13, 2013, Dr. Clough examined Plaintiff again for cataracts.  Dr. Clough noted "Inmate currently meets BOP Ophthalmology Guidelines (Feb 20, 2008) for cataract evaluation and surgical removal with IOL implant."  Medical Record, March 13, 2013, docket #51 at 12.

19.     As of April 22, 2013, the Plaintiff had filed no administrative grievances concerning his cataracts since he arrived at the FPC Florence.  Administrative Remedy Generalized Retrieval, April 22, 2013, docket #47-1 at 14.

## LEGAL STANDARDS

### I.     Treatment of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably

read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## II. Dismissal under Fed. R. Civ. P. 56

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

The only question presented by the present motion is whether the Plaintiff has exhausted his available administrative remedies before filing claims against Defendant Kellar in this matter. Kellar argues that Plaintiff failed to file any administrative remedy requests concerning the claims in this action after Plaintiff arrived at the FPC Florence and, thus, Plaintiff has failed to exhaust as

to Kellar.  Plaintiff counters that he was not required to file a remedy request after his arrival at FPC Florence because his remedy requests concerning cataract surgery were filed at Bastrop, Texas and he won the relief he requested.  Alternatively, Plaintiff contends that he attempted to obtain remedy request forms from his counselor at FPC Florence once he discovered that the surgery was going to be delayed, but the counselor refused to give him forms saying that he had already completed the process in Texas.  The Court will analyze each contention in turn.

I.      **Exhaustion at the BOP**

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust any available administrative remedies before challenging prison conditions in federal court.  Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (1996).  The administrative remedies provision of the PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

§ 42 U.S.C. 1997e(a). At one time, exhaustion was left to the discretion of the district court; however, it has since become mandatory.  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards."  *Id.* "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  *Jones v. Bock*, 549 U.S. 199, 204 (2007).  The purpose of proper exhaustion is to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.  *Id.* (quoting *Woodford*, 548 U.S. at 94-95).

Accordingly, the Supreme Court has determined "exhaustion is mandatory under the PLRA"

and "unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 204.  The exhaustion of administrative remedies need not be pleaded in the complaint but must be raised as an affirmative defense. *Id.*  The rules governing the process for fulfilling the administrative remedy obligation are not articulated by the PLRA but are defined by the respective prison grievance process.  *Id*. at 205.  In order to "properly exhaust" in satisfaction of the PLRA requirement, the plaintiff prisoner must comply with all prison grievance procedures.  *Id*.; *see also Woodford*, 548 U.S. at 90-91 (finding that the PLRA exhaustion requirement "demands compliance with an agency's deadlines and other critical procedural rules").  Therefore, according to *Jones*, claims that have not progressed through the prison grievance process may not be brought in court.

For federal prisons, the Code of Federal Regulations establishes the Bureau of Prison's Administrative Remedy Program as the requisite prison grievance process.  28 C.F.R. §§ 542.10-19.  This program requires four steps.  First, the inmate must attempt informal resolution of the concerning issue by presenting it to staff, before submitting a Request for Administrative Remedy.  Wardens are responsible for establishing informal resolution procedures.  28 C.F.R. § 542.13.  Second, the inmate may make an initial filing of a formal written Administrative Remedy Request on a specified form, Form BP-9, within 20 calendar days after the date giving rise for the issue of concern.  *Id.* at § 542.14.  The inmate may obtain a Form BP-9 from institution staff.  Extensions of time for filing are available if the inmate shows "a valid reason for delay" as described in this section of the regulation.  *Id*.  Third, an inmate who is not satisfied with the response to her or his initial filing may submit an appeal to the Regional Director on Form BP-10 within 20 calendar days of the date indicated on the response to the initial filing.  *Id.* at § 542.15.  Fourth, if the inmate is not satisfied with the Regional Director's response, he or she may submit an appeal on Form BP-11 to

the General Counsel within 30 calendar days of the Regional Director's response. *Id.* Section 542.18 provides that "a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received."

Here, Kellar supports the present motion with a Declaration of Clay C. Cook, Senior Attorney Advisor at the Federal Correctional Complex in Florence, Colorado, and a copy of the SENTRY Administrative Remedy Generalized Retrieval record of Plaintiff's filed administrative remedy requests. Docket #47-1 at 1 and 14. Mr. Cook describes the Bureau of Prison's grievance procedure and the records database SENTRY, which maintains information related to inmates' administrative complaints including a listing of complaints and appeals filed by any specific inmate. The attached record lists a total of nine (9) administrative remedy requests or appeals filed by the Plaintiff since 2006. *Id.* at 14. The record indicates Plaintiff filed BP-9 through BP-11 remedy requests requesting cataract surgery while incarcerated at FCI Bastrop, but filed no remedy requests from August 2012 through April 22, 2013, during the time he has been housed in Florence. *Id.*

## II.    Was Plaintiff Required to File a Remedy Request at FPC Florence?

This Court's short answer is, "yes." It is undisputed that Plaintiff completed the BOP's grievance process while at FCI Bastrop by requesting surgery to remove his cataracts in BP-8 through BP-11 forms.[4] However, these remedy requests did not identify Kellar nor any alleged conduct by Kellar; in fact, such conduct would necessarily have taken place subsequently at FCP Florence. Administrative remedy requests pre-dating the conduct at issue cannot exhaust the

---

[4]Actually, the record reveals a possibility that there was no need for the Plaintiff to pursue the administrative appeal process at FCI Bastrop for approval of his cataract surgery. As each administrative response indicates, the medical referral for surgery was making its way through applicable channels outside the purview of the administrative remedies process and, eventually, the surgery was approved by a regional medical director.

Plaintiff's administrative remedies. *See Ross v. Bernalillo*, 365 F.3d 1181, 1188 (10th Cir. 2004) ("A grievance obviously cannot exhaust administrative remedies for claims based on events that have not yet occurred."), *overruled on other grounds by Jones*, 549 U.S. at 206, n. 3. By failing to file a remedy request concerning Kellar's alleged conduct at FCP Florence, Plaintiff effectively eliminated Kellar's ability to attempt to resolve Plaintiff's grievance informally before being sued, which is one of the purposes behind the exhaustion requirement. *See Jones*, 549 U.S. at 204 ("Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.").

Plaintiff argues that he had already won the relief he sought at FCI Bastrop – approval of cataract surgery – and should not be required to start the process all over again just because he was transferred to another facility. The Plaintiff's argument is misplaced; if he were claiming here that the medical staff at FCI Bastrop had refused to follow the Regional Medical Director's approval of cataract surgery, then perhaps Plaintiff's claim would be exhausted. However, in this lawsuit, Plaintiff claims that after he was transferred to FCP Florence, Kellar referred Plaintiff to Dr. Wilson and, by so doing, delayed medical treatment by requiring the Plaintiff to start the approval process all over again. Plaintiff's remedy requests filed at FCI Bastrop identify none of this conduct nor even Kellar himself.

Accordingly, the Court recommends that the District Court find Plaintiff was required to file an administrative remedy request and complete the BOP grievance process at FPC Florence before filing a lawsuit against Kellar.

**III.     Were Administrative Remedies Available to Plaintiff at FPC Florence?**

This Court finds that genuine issues of material fact exist as to whether administrative remedies were available to the Plaintiff at FPC Florence.

Plaintiff contends that summary judgment is not appropriate on the exhaustion issue because he had attempted "to initiate a new set of administrative remedies" at FPC Florence when he realized that cataract surgery would not be performed, but his counselor, Mr. Enderle, "refused to provide them." Response, docket #51 at 2. Specifically, Plaintiff attests that

> when it became evident that the defendants were not going to provide the surgery which Region had already approved, I requested Administrative Remedy forms from my counselor, Mr. Enderle, and he declined to provide them saying that I had already exhausted them because surgery was already approved and would soon be performed.

Declaration of Bruce Ervin, June 19, 2013, docket #51 at 13. Kellar counters that, although the Plaintiff knew how to perform each step of the grievance process (as demonstrated at FCI Bastrop), he failed to take any of the steps at FCP Florence and he "knew ... that a counselor does not have the authority to answer for the Warden, the Region, or the General Counsel." Reply, docket #53 at 6.

For an inmate to properly exhaust in accordance with the Prison Litigation Reform Act (PLRA), the administrative remedies must be made available to the inmate. 42 U.S.C. § 1997e(a). According to the Tenth Circuit,

> [W]e examine the plain meaning of the term "available" in § 1997e(a) and find that a prisoner is only required to exhaust those procedures that he or she is reasonably *capable* of exhausting. *See Underwood v. Wilson,* 151 F.3d 292, 295 (5th Cir. 1998). For example, "[T]he failure [of prison officials] to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable." *Jernigan,* 304 F.3d at 1032. Similarly, a prisoner lacks "available" remedies where prison officials deny him or her the necessary grievance forms. *Mitchell v. Horn,* 318 F.3d 523, 529 (3d Cir. 2003). Where prison officials prevent or thwart a prisoner from utilizing an administrative remedy, they have rendered that remedy "unavailable" and a court will deem that procedure "exhausted." *See Lyon*

14

> *v. Vande Krol,* 305 F.3d 806, 808 (8th Cir. 2002); *Miller v. Norris,* 247 F.3d 736, 740 (8th Cir. 2001).

*Hoover v. West*, 93 F. App'x 177, 181 (10th Cir. 2004) (emphasis in original); *see also Sparks v. Foster*, 241 F. App'x 467, 473 (10th Cir. 2007).  Thus, it is material to the exhaustion issue whether request forms for administrative remedies were made available to the Plaintiff at FPC Florence.

Plaintiff contends that his FPC counselor, Mr. Enderle, declined to provide him remedy request forms saying that the surgery was already approved and would soon be performed.  Plaintiff supports his contention with an declaration pursuant to 28 U.S.C. § 1746.  The Court finds that Plaintiff's declaration regarding this issue is non-conclusory and provides a sufficient factual basis for Plaintiff's contention.

Kellar counters that Plaintiff failed to file a remedy request with the warden or to appeal to the region and general counsel, and that Plaintiff "knew ... that a counselor does not have the authority to answer for the Warden, the Region, or the General Counsel."  Kellar's argument is nonsensical.  According to the applicable regulations and case law, prison staff are to provide inmates with administrative remedy forms when requested, unless exigent circumstances exist.  Here, there is no evidence of any circumstances prohibiting an FPC Florence counselor from providing administrative remedy request forms to the Plaintiff.  Certainly, Kellar cannot dispute that, had the Plaintiff attempted to file a remedy request without using the proper form, the request likely would have been denied.  *See* 28 C.F.R. § 542.14(a).

By declaring under penalty of perjury that a prison counselor denied Plaintiff's request for an administrative remedy request form saying that he had already exhausted by obtaining the remedy he requested in Texas, the Plaintiff has raised a disputed material fact as to whether administrative remedies were made available to him before he filed the present lawsuit against Kellar and, if they

15

were not, whether he has exhausted such administrative remedies.  *See Hoover*, 93 F. App'x at 181

(citing *Lyon v. Vande Krol,* 305 F.3d 806, 808 (8th Cir. 2002)).  Accordingly, this Court respectfully

recommends that the District Court deny Kellar's motion for summary judgment on the Plaintiff's

alleged failure to exhaust administrative remedies as to Defendant Kellar.

<u>**CONCLUSION**</u>

Based upon the foregoing and the entire record herein, this Court respectfully

RECOMMENDS that Defendant Kellar's [first] Motion for Summary Judgment [<u>filed May 13,

2013; docket #47</u>] be **DENIED**.

Entered and dated at Denver, Colorado, this 18th day of July, 2013.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

16