IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02602-PAB-MEH

BRUCE ERVIN,

      Plaintiff,

v.

WILSON, D.C.,
KELLER, Health Services Adm., P.A.,
LISA GREGORY, and
Five John/Jane Does,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

Before the Court is Plaintiff's Second Motion for Leave to File Second Amended Complaint

[filed July 1, 2014; docket #103].  Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR

72.1C, the matter is referred to this Court for recommendation [docket #104].  The motion is fully

briefed, and oral argument would not materially assist the Court in its adjudication.  For the reasons

that follow, the Court respectfully recommends that Plaintiff's motion be **denied**.[1]

_____

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file
any written objections in order to obtain reconsideration by the District Judge to whom this case is
assigned.  Fed. R. Civ. P. 72(b).  The party filing objections must specifically identify those findings
or recommendations to which the objections are being made.  The District Court need not consider
frivolous, conclusive or general objections.  A party's failure to file such written objections to
proposed findings and recommendations contained in this report may bar the party from a de novo
determination by the District Judge of the proposed findings and recommendations.  *United States
v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file
written objections to the proposed findings and recommendations within fourteen (14) days after
being served with a copy may bar the aggrieved party from appealing the factual findings of the
Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140,
155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar
Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

## BACKGROUND

Plaintiff initiated this lawsuit pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) as a *pro se* litigant incarcerated in the Federal Prison Camp (FPC) in Florence, Colorado.  In that pleading, Plaintiff claimed he suffers severe cataract problems in both eyes and was diagnosed with cataracts while in custody at the "FCI in Bastrop, Texas."  Plaintiff was examined by a ophthalmologist on March 29, 2012, who recommended surgery.  The recommendation was referred to the Bureau of Prison's ("BOP") Regional Office and approved on May 18, 2012.  However, prior to performing surgery, Defendants John and Jane Does from Grand Prairie, Texas and Bastrop, Texas ordered Plaintiff transferred to the FPC in Florence, Colorado.  When Plaintiff objected to the transfer, Defendants John and Jane Does informed Plaintiff that he would be able to have the surgery immediately upon arriving in Florence.

Plaintiff contends that Defendants knew of his "serious" cataract problem through his medical record.  He states that he suffers "glare preventing [him] from seeing beyond a few feet." Plaintiff claims the degree of impairment to his sight prevents him from safely navigating the premises and performing his assigned work and exposes him to serious risks and safety problems. Plaintiff believes that Defendants have intentionally delayed surgery and it may never be performed.

Defendant Kellar[2] responded to the Complaint by filing a motion to dismiss arguing the Plaintiff failed to allege that Kellar was involved in any delay of medical treatment, that Kellar was motivated to or intentionally delayed medical treatment, that any delay in medical treatment resulted

---

[2]Although Plaintiff's spells Kellar's name as "Keller," Defendant has corrected the spelling to "Kellar." There is nothing on the docket indicating that Defendant Wilson has been properly served in this case.  On March 4, 2013, the U.S. Marshal attempted to serve Wilson, but he was no longer employed with the Bureau of Prisons and they were unable to locate him.  Docket #23.

2

in substantial harm, and that any claims against Kellar in his official capacity were barred by sovereign immunity. Docket #28. On April 17, 2013, this Court held a scheduling conference at which the Court set deadlines for discovery and dispositive motions in this case. Docket #35.

On May 24, 2013, the District Court adopted this Court's recommendation to grant the motion to dismiss and, because Plaintiff had not yet had the opportunity to do so, to allow the Plaintiff to amend his Complaint to cure the deficiencies noted in the recommendation. Docket #40. Plaintiff filed an Amended Complaint on May 13, 2013, apparently in anticipation of the District Court's order. Docket #39. The District Court affirmed its acceptance of the First Amended Complaint on June 5, 2013. Docket #43. The amended pleading alleges that Kellar, rather than Defendant Wilson, compelled Plaintiff to "run through the process all over again" to obtain approval for cataract surgery and, thus, intentionally delayed medical treatment for the Plaintiff. *Compare* First Amended Complaint, docket #39 at 4 *with* Complaint, docket #1 at 4. Plaintiff further claims that Kellar, knowing Plaintiff had subsequently seen an optometrist in Florence in October 2012 and had been referred for cataract surgery, delayed treatment by submitting the referral to the North Central Region for approval, and the referral was denied. First Amended Complaint, docket # 39 at 7. Plaintiff also added claims against Defendant "Lisa Gregory"; however, according to the First Amended Complaint, she is located in Kansas City and has not been served. *See* docket #39.

Based on these allegations, Plaintiff claims that Defendants deprived him of his Eighth Amendment right against cruel and unusual punishment by their deliberate indifference to Plaintiff's serious medical needs. *Id.* at 7-8. Plaintiff requests compensatory and punitive damages as relief against the individual Defendants jointly and severally, and injunctive relief against the Defendants in their official capacities in the form of an order requiring cataract surgery to be performed

immediately.  *Id*. at 14.

Rather than file a responsive pleading, Kellar sought leave to file a motion seeking summary judgment as to Plaintiff's alleged failure to exhaust administrative remedies.  Docket #44.  This Court granted the request (docket #46) and, following briefing on the motion for summary judgment, recommended that the motion be denied (docket #56).  Meanwhile, Defendants filed an Answer to the Amended Complaint on July 17, 2013.  Docket #55.  The Honorable Philip A Brimmer adopted this Court's recommendation on August 8, 2013.  Docket #58.

Thereafter, this Court granted Defendant's motion for extension of the discovery deadlines (docket #61) and, as discovery proceeded, granted Plaintiff's request for extensions of the deadlines as well (docket #83).  Defendant Kellar timely filed a motion for summary judgment as to the merits of Plaintiff's sole claim against him for deliberate indifference in violation of the Eighth Amendment (docket #88), and this Court recommended on March 24, 2014 that the motion be granted (docket #95).  That recommendation remains pending before the District Court.

More than a year after the operative pleading was filed, Plaintiff filed a motion for leave to file a Second Amended Complaint on June 18, 2014, but this Court denied it without prejudice for failing to explain why justice required the amendments, particularly at this late stage of the litigation.  (Dockets ## 99, 101.)  Plaintiff then filed the present motion to amend arguing that he is finally able to identify the five John/Jane Does and explain what each did to him in violation of his constitutional rights.  (Docket #103.)  The motion is fully briefed and the Court recommends as follows.

## **DISCUSSION**

A plaintiff seeking to substitute a named defendant for a John or Jane Doe still must satisfy

4

the requirements of Fed. R. Civ. P. 15. *See Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004) (noting that substituting a named defendant for an unknown John Doe constitutes a change in the party being sued); *see also* Fed. R. Civ. P. 15.

According to Rule 15, once a 21-day period after a responsive pleading to the complaint is filed lapses, a party may amend its pleading only by leave of the court or by written consent of the adverse party. *Id.*; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). The grant or denial of leave is committed to the discretion of the district court. *See Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005). The Court must heed Rule 15's mandate that the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2) (2013); *see also Foman,* 371 U.S. at 182; *Duncan*, 397 F.3d at 1315. "If the underlying facts or circumstances relied upon by a [claimant] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman,* 371 U.S. at 182. Leave to amend should be refused "only on a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan*, 397 F.3d at 1315; *see also Foman,* 371 U.S. at 182.

Here, Kellar argues that the proposed amendments should be denied as futile due to this Court's lack of personal jurisdiction over the Doe Defendants, and as unduly delayed.[3] The Court will address each challenge, beginning with futility.

A.    Futility of the Amendments

---

[3]Plaintiff argues that, in filing a response to the present motion, Kellar's counsel is improperly representing the proposed new defendants. Plaintiff's argument is incorrect; parties are permitted to file objections to an opposing party's request for relief from the Court. *See* D.C. Colo. LCivR 7.1.

Kellar argues that permitting the proposed amendments would be futile, as the Court lacks personal jurisdiction over the proposed new Defendants Pierce, Maye, Ramirez, Sharpaugh, and Maldonado, formerly known as the "John/Jane Doe Defendants" (hereafter referred to as "Doe Defendants").   Moreover, the Court finds, *sua sponte*, that it must analyze whether Plaintiff's proposed claims are barred by the applicable statute of limitations.   The Court will address each argument in turn.

1.   *Personal Jurisdiction*

"Jurisdiction to resolve cases on the merits requires ... authority over the parties (personal jurisdiction), so that the court's decision will bind them."  *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)).[4] "In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (internal quotation marks and citation omitted).

Where the federal statute at issue does not authorize nationwide service of process, a court may assert personal jurisdiction "to the extent allowed by the state in which the district court sits." *SCC Communs. Corp. v. Anderson*, 195 F. Supp. 2d 1257, 1259-60 (D. Colo. 2002).   The statute by which Plaintiff brings his claims, 42 U.S.C. § 1983, does not confer nationwide service of process. *Trujillo*, 465 F.3d at 1217 (stating that 42 U.S.C. § 1983 does not confer nationwide service of

---

[4]Plaintiff's argument is incorrect that the Court's subject-matter jurisdiction over the proposed defendants is sufficient.  A federal court must have both subject-matter jurisdiction over the claims and personal jurisdiction over the parties. *See Ruhrgas AG*, 526 U.S. at 577.

process or jurisdiction upon federal district courts)).  Therefore, Fed. R. Civ. P. 4(k)(1)(A) governs

this Court's authority to exercise personal jurisdiction over the proposed Defendants as individuals

residing in Texas.  Rule 4(k)(1)(A) provides that "[s]erving a summons ... establishes personal

jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction

in the state where the district court is located."

"Since in personam jurisdiction of a state court is limited by that state's laws and by the

Fourteenth Amendment, [the Court must] inquire whether the state long-arm statute authorizes the

exercise of jurisdiction over the defendant. If it does, [the Court] must then determine whether the

state court's exercise of such jurisdiction is consistent with the Due Process Clause of the Fourteenth

Amendment ...."  *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997) (citations

omitted).  However, in Colorado, only one inquiry is necessary, as the Colorado long-arm statute,

Colo. Rev. Stat. § 13-1-124(1), "confer[s] the maximum jurisdiction permitted by the due process

clauses of the United States and Colorado constitutions," and its requirements are necessarily

addressed under a due process analysis.[5] *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193

(Colo. 2005) (en banc).

When evaluating personal jurisdiction under the due process clause, the Tenth Circuit

conducts a two-step analysis. At the first step, the court examines "whether the non-resident

defendant has 'minimum contacts' with the forum state such 'that he should reasonably anticipate

---

[5]Plaintiff's argument that his allegations meet the requirements of Colorado's long-arm statute does not end the discussion.  Whether or not Plaintiff's allegations meet state statutory requirements, they must also comport with federal due process standards.  *See Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 99-100 (10th Cir. 2012) ("it is federal law, not Colorado's interpretation of it, that must ultimately determine whether the exercise of personal jurisdiction comports with due process requirements").

being haled into court there.'" *TH Agric. & Nutrition, LLC v. Ace European Group, Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007) (citations omitted).  If the defendant has sufficient contacts, the court then asks whether "exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances of a given case. *Id.* (citations omitted).  "This analysis is fact specific." *ClearOne Communs., Inc. v. Bowers,* 643 F.3d 735, 763 (10th Cir. 2011) (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010)).

The "minimum contacts" test may be met pursuant to either of two ways – general jurisdiction or specific jurisdiction.  First, if a defendant has "continuous and systematic general business contacts" with the forum state, it may be subjected to the general jurisdiction of the forum state's courts. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 416 (1984).  Second, even in the absence of "continuous and systematic" contacts, a state's courts may exercise specific jurisdiction over a defendant that "purposefully directed" its activities at the state's residents, if the cause of action arises out of those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985); *see also Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) ("A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state.") (internal quotation marks and citation omitted).

In addition to examining the Doe Defendants' minimum contacts with Colorado, the Court must analyze whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice" in this case. *ClearOne Communs., Inc.*, 643 F.3d at 764.  This inquiry requires a determination of whether personal jurisdiction over a defendant with minimum contacts

8

is reasonable in light of the circumstances surrounding the case.  *Id.*  In assessing reasonableness, a court considers: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.  *Id.*

a.  <u>General Jurisdiction</u>

General jurisdiction, unlike specific jurisdiction, subjects a defendant to a court's personal jurisdiction even when the controversy is not related to the defendant's activities in the forum. Specifically, "when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign corporation."  *Hall*, 466 U.S. at 414.  However, these contacts must be "continuous and systematic." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996) (quoting *Hall,* 466 U.S. at 416).

According to the allegations in the proposed Second Amended Complaint, none of the Doe Defendants had any contacts with Colorado other than, possibly, during the one and only transfer of the Plaintiff to Colorado.  The Plaintiff has not established that the Doe Defendants maintained offices, had bank accounts or other property, or were registered to do business in Colorado.  Thus, the Court recommends finding that Plaintiff has failed to make a prima facie showing that this Court has general personal jurisdiction over the Doe Defendants.  *See, e.g., SGI Air Holdings II LLC v. Novartis Int'l, AG*, 192 F. Supp. 2d 1195, 1202-03 (D. Colo. 2002) (noting that where the only contacts are sending and receiving of electronic communications and the defendant has entered the

forum state to discuss details of a contract, courts have found no personal jurisdiction).

b.    Specific Jurisdiction

"Under the specific-jurisdiction requirement, a plaintiff satisfies the minimum-contacts standard by showing that (1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state, and (2) the litigation results from the alleged injuries that arise out of or relate to those activities." *Bartile Roofs, Inc.*, 618 F.3d at 1160.  With respect to this question, Colorado's long-arm statute provides, in pertinent part,

> Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person and, if a natural person, such person's personal representative to the jurisdiction of the courts of this state concerning any cause of action arising from:
>
> (a) The transaction of any business within this state;
>
> (b) The commission of a tortious act within this state.

Colo. Rev. Stat. § 13-1-124(1).  Plaintiff neither alleges nor argues that the Doe Defendants transacted business in Colorado, and the conduct Plaintiff challenges as unconstitutional (failures to provide medical treatment and to stop transfer to Colorado) allegedly took place in Texas. Because Plaintiff does not allege sufficient facts demonstrating this Court has specific jurisdiction over the Doe Defendants, this Court recommends that the District Court deny Plaintiff's request to add claims against the Doe Defendants in this case.

c.    Fair Play and Substantial Justice

Even if the Plaintiff's allegations could be construed as meeting general or specific jurisdiction requirements, the Court finds that imposing jurisdiction over the Doe Defendants would be unreasonable.  First, defending claims brought in Colorado against individual parties in Texas

10

would be time-consuming and a financial burden on the Texas individuals.  Moreover, even though adjudicating the case in this Court would be convenient to the Plaintiff, Colorado does not necessarily have any interest in adjudicating claims against individuals who reside, and whose conduct occurred, in Texas.  Consideration of the other two factors does not persuade the Court in either direction.  Accordingly, the Court finds that consideration of the *ClearOne Communs.* factors weighs against imposing jurisdiction over the proposed Doe Defendants, and recommends that the Court deny Plaintiff's request to amend his pleading to add claims against them.

2.    *Statute of Limitations*

It appears from the face of the proposed Second Amended Complaint that claims against certain of the "new" Defendants may be barred by the statute of limitations.  For example, Plaintiff alleges that Warden Clyde Maye, as a supervisor of the Primary Care Provider team, provided him "no professional care ... for Ervin's cataract needs from 2006 through April 21, 2010."  Docket #103 at 5.  Likewise, Plaintiff alleges that Health Services Administrator Sharpaugh "did nothing" when Plaintiff complained to him in 2009.  *Id.* at 6.  In the same vein, Plaintiff alleges BOP South Central Regional Director Maldonado "was to supervise the Primary Care Provider Team, and he did nothing to assure Ervin was being accorded any treatment for his cataracts for over three years" since Plaintiff's diagnosis in 2006.[6]  *Id.*

As set forth above, Plaintiff filed his initial complaint on October 1, 2012, and the time to amend pleadings and to complete discovery has long passed.  Plaintiff's § 1983 claims are governed by the two-year statute of limitations contained in Colo. Rev. Stat. § 13-80-102.  *Workman v.*

---

[6]Plaintiff's alleges the other two Doe Defendants – Pierce and Ramirez – failed or refused to stop his transfer to FCP Florence in 2012.

*Jordan*, 32 F.3d 475, 482 (10th Cir. 1994); *Merrigan v. Affiliated Bankshares of Colo., Inc.*, 775 F.

Supp. 1408, 1411-12 (D. Colo. 1991).   More than two years had passed since the date of the last

alleged acts by the Doe Defendants Maye, Sharpaugh and Maldonado; therefore, the statute of

limitations has run with respect to these defendants.   Accordingly, this Court finds the § 1983 claims

against defendants Maye, Sharpaugh and Maldonado are futile as they may be dismissed *sua sponte*.

*See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir.) ("A complaint may be dismissed sua sponte

under § 1915 based on an affirmative defense – such as statute of limitations – 'only when the

defense is obvious from the face of the complaint and no further factual record is required to be

developed.'"), *cert. denied*, 549 U.S. 1059 (2006); *see also Garrett*, 362 F.3d at 696 (prisoner

substitution of named defendants for the original unknown "John Doe" defendants amounted to

adding a new party. Complaint was dismissed as barred by applicable statute of limitations. Rule

15(c)'s "relation back" provision did not apply because a plaintiff's lack of knowledge of the

intended defendant.s identity is not a "mistake concerning the identity of the proper party" within

the meaning of Rule 15(c)(3)(B)."); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) ("'[i]t is

familiar law that "John Doe" pleadings cannot be used to circumvent statutes of limitations because

replacing a "John Doe" with a named party in effect constitutes a change in the party sued.' ... And

even when a suit is brought by pro se litigant, 'an amended complaint adding new defendants

[cannot] relate back if the newly-added defendants were not named originally because the plaintiff

did not know their identities.' ... [Plaintiff's] failure until two years after the expiration of the statute

of limitations period to name specifically in his complaint the officers who allegedly violated his

rights is therefore fatal to his *Bivens* claim.").

Fed. R. Civ. P. 15(c)(1) governs the relation back of amendments.  If the applicable statute

of limitations has run, an amended complaint may relate back to the date of the timely filed original complaint when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(A-C).  As reflected in the plain language of the statute, Rule 15(c)(1)(B) applies to an amendment asserting a claim or defense, and Rule 15(c)(1)(C) applies to an amendment changing a party or the naming of a party (the connecting word between Rule 15(c)(1)(B) and (C) is "or").  *See Pierce v. Amaranto*, 276 F. App'x 788, 792 (10th Cir. May 1, 2008) (finding that the predecessor to Rule 15(c)(1)(B) governs "*issues*, not *parties*, that were not raised in the pleadings") (emphasis in original).

Accordingly, Rule 15(c)(1)(C) applies to the addition of new parties after the statute of limitations has run on proposed new claims.  *See VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 128 (2d Cir. 2001) ("[i]f a complaint is amended to include an additional defendant after the statue of limitations has run, the amended complaint is not time barred if it 'relates back' to a timely filed complaint.").  "[Rule 15(c)(1)] mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable

13

discretion." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 553 (2010).  The purpose of relation back is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure...for resolving disputes on their merits."  *Id.* at 550.

The Plaintiff has not demonstrated, argued, or otherwise addressed his burden to show that Maye, Sharpaugh and Maldonado had notice of the action prior to the expiration of the statute of limitations, or that these proposed defendants knew or should have known that, but for a mistake in identity, the action would have been brought against them. Without such a showing, Plaintiff's proposed amendment to substitute Maye, Sharpaugh and Maldonado for the John Doe Defendants does not relate back to the filing of the original complaint. Accordingly, Plaintiff's proposed allegations against Maye, Sharpaugh and Maldonado are futile as they would be barred by the statute of limitations, and this Court recommends that the amendments be denied.

B.    Undue Delay

In the event that the District Court disagrees with this Court's recommendation concerning the futility of the proposed amendments, the Court will proceed with an analysis of Kellar's challenge concerning undue delay of the proposed amendments and will consider whether the amendments would prejudice the Defendants.

When evaluating an opposition to a motion to amend based upon undue delay, the Tenth Circuit focuses primarily on the asserted reasons for delay.  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006).  Denial based upon delay is appropriate "when the party filing the motion has no adequate explanation for the delay," or in instances where it appears the plaintiff utilizes Rule 15 to make the complaint "a moving target."  *Id.* (citations omitted).  The Court may

14

also deny leave to amend "where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend." *Federal Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987).

Here, the Court finds that the motion is untimely because Plaintiff fails to provide an adequate explanation for the delay after discovery closed on January 20, 2014.  Although Plaintiff contends that he just recently learned the identities of the five Doe Defendants, he does not explain why it took him nearly two years (since he initiated this action) to learn the identities, nor why he was unable to learn the identities during the prolonged discovery period in this case.  In addition, Plaintiff adds Mr. Berkebile ("Warden")` as a named Defendant in the Second Amended Complaint (not one of the Doe Defendants), but fails entirely to argue or explain why it is appropriate to add Mr. Berkebile at this late stage.

Moreover, at this stage of the litigation, this Court's recommendation to grant Kellar's motion for summary is pending before the District Court.  As such, it appears that the Plaintiff is using Rule 15 to make his Complaint a "moving target" in raising claims against new defendants, the facts of which were not in the original or operative pleadings.  For instance, none of the facts alleged against the Doe Defendants, other than that they failed or refused to stop Plaintiff's transfer to Colorado, were alleged in Plaintiff's previous pleadings.  In fact, in the original Complaint, Plaintiff describes the Doe Defendants as "some of the John/Jane Does in Grand Prairie, Texas and Bastrop, Texas, disregarded the need for surgery and ordered me transferred to the FPC in Florence," but, in the operative First Amended Complaint, the Plaintiff identifies the Doe Defendants as "includ[ing] other employees of the Federal Correctional Complex, which includes the four Federal prisons in Florence, Colorado ... [t]hey all are or were residents of Colorado and

employees of BOP at the time of the constitutional deprivations alleged in this Amended Complaint." *See* dockets #1 and #39. Clearly, Plaintiff knew in October 2012 the facts now alleged against the new defendants, but failed to allege them until nearly two years later.

Thus, the Court finds that denial of the proposed amendments based upon undue delay is appropriate here.

C.     Undue Prejudice

In the Tenth Circuit, the "most important . . . factor in deciding a motion to amend the pleadings ... is whether the amendment would prejudice the nonmoving party." *Minter*, 451 F.3d at 1207. "Courts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Id.* (citing *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.* (citations omitted). "As a general rule, a plaintiff should not be prevented from pursuing a valid claim ... 'provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits.'" *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090-91 (10th Cir. 1991).

Here, the Court believes permitting amendment of the complaint to add new defendants and new claims would unduly prejudice Kellar at this stage in the litigation. This case proceeded through a motion to dismiss (which was granted without prejudice to permitting Plaintiff to amend his complaint), through discovery on the Amended Complaint, and through the filing of a dispositive motion for which a recommendation is currently pending.

The Court concludes that permitting amendment to raise new claims against non-parties at

16

this stage of the litigation unduly prejudices Kellar (the sole Defendant who has appeared in the case), as Kellar has already engaged in discovery of the Plaintiff's claims, and the proposed claims alleged against the new defendants here are based primarily on conduct different than that alleged in the First Amended Complaint. *See Minter*, 451 F.3d at 1207 (undue prejudice most often "occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues"). Therefore, the parties essentially may need to "re-start" discovery, or at the very least, engage in an extended period of discovery in this case if amendment is granted.

Accordingly, the Court finds that granting Plaintiff's motion as to the proposed claims against non-parties would unduly prejudice Kellar at this stage when all other claims have been nearly resolved. *See, e.g., Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) (affirming district court's denial of a motion to amend as the case "was near resolution and discovery had been completed"); *Semsroth v. City of Wichita*, No. 04-1245-MLB, 2006 WL 2570557, at *5 (D. Kan. Sept. 5, 2006) (denial of a motion to file a second amended class action complaint because significant discovery had occurred, written discovery requests had been served, and the proposed complaint contained new factual allegations).

This Court recommends that the District Court deny the present motion to amend pursuant to Fed. R. Civ. P. 15(a), as the proposed amendments are unduly delayed, unduly prejudicial and would be futile, if permitted.

## CONCLUSION

Accordingly, for the reasons stated above and based on the entire record herein, the Court respectfully RECOMMENDS that Plaintiff's Second Motion for Leave to File Second Amended

Complaint [filed July 1, 2014; docket #103] be **DENIED**.

Dated at Denver, Colorado, this 13th day of August, 2014.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge