IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02602-PAB-MEH

BRUCE ERVIN,

    Plaintiff,

v.

LISA GREGORY,

    Defendant.

___

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
___

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendant Gregory's Motion to Dismiss [filed December 11, 2014; docket #116] and Motion for Summary Judgment [filed December 11, 2014; docket #117]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matters were referred to this Court for recommendation [docket #118]. The motions are fully briefed, and oral argument would not materially assist the Court in its adjudication of the motions. For the reasons that follow, the Court respectfully recommends that Defendant's motion for summary judgment be **granted** and her motion to dismiss **denied as moot**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the

## BACKGROUND

Plaintiff initiated this lawsuit pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) on October 1, 2012, as a *pro se* litigant incarcerated in the Federal Prison Camp (FPC) in Florence, Colorado.

### I. Procedural History

The Court has described the lengthy procedural background of this case in several previous recommendations; accordingly, here, the Court will provide the history only as it relates to the motions at hand. Plaintiff alleges he suffers severe cataract problems in both eyes and was diagnosed with cataracts while in custody at the "FCI in Bastrop, Texas." Plaintiff was examined by a ophthalmologist on March 29, 2012, who recommended surgery. The recommendation was referred to the Bureau of Prison's ("BOP") Regional Office and approved on May 18, 2012. However, prior to performing surgery, former Defendants John and Jane Does from Grand Prairie, Texas and Bastrop, Texas ordered Plaintiff transferred to the FPC in Florence, Colorado. When Plaintiff objected to the transfer, Defendants John and Jane Does informed Plaintiff that he would be able to have the surgery immediately upon arriving in Florence.

Plaintiff contends that the previously named Defendants knew of his "serious" cataract problem through his medical record. He states that he suffers "glare preventing [him] from seeing beyond a few feet." Plaintiff claims the degree of impairment to his sight prevents him from safely navigating the premises and performing his assigned work and exposes him to serious risks and safety problems. Plaintiff believes that Defendants intentionally delayed surgery and it may never

---

Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

be performed.

Following the District Court's adoption of this Court's recommendation to permit Plaintiff to amend his complaint, Plaintiff filed an Amended Complaint on May 13, 2013 clarifying his original claims and adding claims against Defendant Gregory.[2] First Amended Complaint, docket # 39. Essentially, Plaintiff alleges Ms. Gregory, as Regional Medical Director for the North Central Region of the Bureau of Prisons (BOP), denied his request for cataract surgery in or about November 2012. *Id.* at 3.

Based on these allegations, Plaintiff claims that Gregory deprived him of his Eighth Amendment right against cruel and unusual punishment by her deliberate indifference to Plaintiff's serious medical needs. *Id.* at 9-10. Plaintiff requests compensatory and punitive damages as relief against Ms. Gregory in her individual capacity, and injunctive relief against her in her official capacity in the form of an order requiring cataract surgery to be performed immediately. *Id*. at 14.

On March 24, 2014, this Court noted in a recommendation to the Honorable Philip A. Brimmer that Gregory had not been served with the Amended Complaint. Docket #95. On September 23, 2014, Judge Brimmer adopted the recommendation and ordered that the U.S. Marshal effect service on Gregory. Docket #111. Gregory was successfully served with the Amended Complaint on October 20, 2014 (docket #113); however, rather than file a responsive pleading, Gregory filed the present motion to dismiss for lack of personal jurisdiction and motion for summary judgment as to the merits of Plaintiff's sole claim against her for deliberate indifference in violation of the Eighth Amendment (dockets ##116, 117).

After finally receiving copies of the motions, Plaintiff filed a motion seeking permission to

---

[2]All other Defendants have been dismissed in this case.

3

conduct discovery on January 22, 2015, which was fully briefed on February 25, 2015. The following day, the Court granted Plaintiff's motion in part identifying the limited discovery Gregory was ordered to provide to the Plaintiff. Docket #134. Gregory filed a certificate of compliance with the order on March 11, 2015 and on March 19, 2015 the Plaintiff filed a notice acknowledging receipt only of Gregory's response but not the Court's order. Docket #136. Accordingly, the Court directed the Clerk of Court to send another copy of the order to the Plaintiff, which was done on March 20, 2015. The parties then filed timely response and reply briefs, but Plaintiff again stated that he had not received the February 26, 2015 order. Accordingly, the Court directed the Clerk of Court to send a third copy of the order to the Plaintiff and permitted the Plaintiff to file a supplemental brief. Docket #42. On May 12, 2015, the Plaintiff timely filed a supplemental response brief in which he implied that Gregory's discovery responses were incomplete. Docket #145. Unfortunately, neither party provided the Court with a copy of Gregory's responses.

Consequently, on June 1, 2015, this Court ordered Gregory to file a supplement to her certificate of compliance with a copy of her discovery responses and to answer an additional interrogatory in an attempt to finally resolve the Plaintiff's objection. Docket #146. Gregory did not comply with the June 1, 2015 order; accordingly, this Court issued an order for Gregory to show cause why she should not be sanctioned. Docket #148. Gregory timely filed a response to the order on June 22, 2015 providing good cause for her failure to comply, as well as a copy of her discovery responses and an answer to the Court's final interrogatory. Dockets ## 150, 151. Thus, the Court discharged the order to show cause. Docket #152. The Court is now fully advised.

## II. Findings of Fact

The Court makes the following findings of fact viewed in the light most favorable to the

Plaintiff, who is the non-moving party in this matter.[3]

1.      Plaintiff was incarcerated at the Federal Correctional Institute (FCI) Bastrop in Texas commencing January 27, 2005. Inmate History, April 22, 2013, docket #47-1 at 12.

2.      On May 18, 2012, while incarcerated in Texas, the South Central Regional Director approved cataract surgery, but the surgery was never scheduled. FCI Bastrop Health Services Notification to Inmate of Medical Action/Results, May 16, 2012, docket #88-3 at 20; *see also* Declaration of James Pelton, February 19, 2014 ("Pelton Declaration"), ¶¶ 11,14.

3.      A "medical hold" status was established at the BOP "to prevent the movement of inmates undergoing medical procedures, treatments and diagnostic interventions." Memo re: Medical Hold Status - Procedures and Implementation, January 24, 2011, docket #88-3 at 18. "Utilizing the Bureau Electronic Medical Record (BEMR) and Sentry, a 'Medical Hold' patient identifier will be designated to any inmate who is scheduled to undergo an approved surgical intervention within 30 days of the scheduled transfer date." *Id.*

4.      Plaintiff was transferred from FCI Bastrop to Federal Prison Camp (FPC) Florence prior to the cataract surgery taking place because he was not designated a "medical hold" and was not then scheduled to undergo surgery on a specific date. Pelton Declaration, ¶ 14, docket #88-3; *see also* BOP Health Services Inmate Intra-System Transfer, July 25, 2012, docket #88-3 at 21.

5.      On August 27, 2012, the National Inmate Appeals Administrator responded to Plaintiff's BP-11 appeal confirming that cataract surgery was approved on May 18, 2012 and that Plaintiff was

---

[3]Except for paragraphs 17-20, the Court found the remaining facts listed here in its recommendation to grant former Defendant Kellar's motion for summary judgment on March 24, 2014. Docket #95. That recommendation was adopted by Judge Brimmer on September 23, 2014. Docket #111. Neither the Plaintiff nor Defendant Gregory challenge the authenticity of the documents from which these facts were found.

transferred from FCI Bastrop to FPC Florence. The Administrator stated, "your cataract condition will be discussed with you further by USP Florence medical staff." Response to Central Office Administrative Remedy Appeal, August 27, 2012, docket #47-1 at 15.

6.      Former Defendant Mark Kellar is a Registered Nurse who was the Health Services Administrator at the Federal Correctional Complex (FCC) in Florence, Colorado, which includes the FPC, from January 2010 to June 2013. Declaration of Mark A. Kellar, February 19, 2014 ("Kellar Declaration"), ¶¶ 1, 2, docket #88-2.

7.      On July 25, 2012, upon being transferred from FCI Bastrop, the health services transfer documentation was completed where cataracts are identified as a current chronic condition. BOP Health Services Inmate Intra-System Transfer, July 25, 2012, docket #88-1 at 24. No travel restrictions were indicated and no medical holds were in place. *Id.*

8.      On August 2, 2012, Plaintiff arrived at FPC Florence from FCI Bastrop via the Federal Transfer Center, Oklahoma City, Oklahoma. Kellar Declaration, ¶ 8, docket #88-2.

9.      Upon arrival at FPC Florence, Plaintiff was medically screened by Kellar, at which Kellar did not list "cataracts" under current painful conditions, current medical conditions, or other current treatments. BOP Health Services Health Screen, August 2, 2012, docket #88-1 at 26-32. Kellar renewed prescriptions and scheduled a consultation in the pulmonary chronic care clinic. *Id.* at 30. Kellar instructed Plaintiff on the procedures to obtain medical, dental, and mental health care. *Id.*

10.     Kellar also referred Plaintiff to former Defendant Dr. Wilson for a complete medical evaluation pursuant to Program Statement 5290.15, Intake Screening § 7(a)(2). Kellar Declaration, ¶ 9, docket #88-2.

11.     Kellar, as Health Services Administrator, did not possess the authority to approve cataract

surgeries for inmates. Kellar Declaration, ¶ 12, *see also* Pelton Declaration, ¶¶ 8, 17.

12.     Dr. Wilson evaluated the Plaintiff on August 13, 2012, as part of the chronic care clinic with the chief complaint being pulmonary/respiratory issues. BOP Health Services Clinical Encounter, August 13, 2012, docket #88-1 at 33-37. Plaintiff told Dr. Wilson that he had been previously approved to have cataract surgery. *Id.* at 33. Upon examination of Plaintiff's eyes, Dr. Wilson noted that Plaintiff's extra ocular movements were intact and had a grossly normal retina. *Id.* at 34. Plaintiff complained of "headaches associated with vision deficits [and] chronic hoarseness." *Id.* at 33. At the conclusion of the consultation, Dr. Wilson ordered an x-ray of Plaintiff's hip due to possible arthritis and a follow-up in six months; he also encouraged the Plaintiff to follow-up at sick call as needed. *Id.* at 36.

13.     On October 3, 2012, Plaintiff was referred to an optometrist, Steve Clough, O.D., who examined Plaintiff for a re-evaluation of bilateral cataracts due to the previous surgical authorization on May 18, 2012. BOP Health Services Clinical Encounter, October 3, 2012, docket #88-1 at 38-40. Dr. Clough notes the Plaintiff "does continue to wear spectacles although no reporting continued decrease in vision over past year." *Id.* at 38. After examining the Plaintiff, Dr. Clough noted that "[a]nterior ocular health unremarkable OU. Posterior ocular health remarkable for moderate posterior subcapsular cataract (PSC) formation OS>OD." *Id.* at 39. The examination revealed Plaintiff had best corrected visual acuity of 20/40 in his right eye and 20/60-2 in his left eye. *Id.*; *see also* Declaration of Steve Clough, Feb. 19, 2014 ("Clough Declaration"), ¶ 16, docket #88-1.

14.     The Bureau's Ophthalmology Guidance recommends cataract surgery when best corrected visual acuity is less than 20/60 in both eyes for the initial surgery and best corrected visual acuity of 20/100 for a second eye surgery. Clough Declaration, ¶ 16, docket #88-1; *see also* BOP

Ophthalmology Guidance, February 2008, p. 5, docket #88-1 at 12-19.

15. Dr. Clough "referred [Plaintiff] for cataract surgery and IOL placement OS followed by OD." BOP Health Services Clinical Encounter, October 3, 2012, docket #88-1 at 39. Accordingly, an ophthalmology consultation request was referred to the Utilization Review Committee ("URC"). *Id.*; *see also* BOP Health Services Consultation Request, docket #88-1 at 41-43. Dr. Clough also scheduled the Plaintiff for a follow-up eye exam in December 2012 and discharged him to the housing unit with no restrictions. BOP Health Services Clinical Encounter, October 3, 2012, docket #88-1 at 39.

16. On November 16, 2012, the URC favorably referred Dr. Clough's ophthalmology consultation request to the Regional Medical Director for final approval. Kellar Declaration, ¶ 11, docket #88-2; *see also* URC Inmate Notification Letter, November 16, 2012, docket #88-1 at 44.

17. On November 28, 2012, the acting Regional Medical Director, Ruby Gideon RN, disapproved the ophthalmology consultation for lacking "the appropriate assessments and interventions" and referred the facility to "InterQual Smartsheets" or "Clinical Practice Guidelines" for requirements. BOP Health Services Consultation Request, docket #88-1 at 43; *see also* URC Inmate Notification Letter, November 29, 2012, docket #88-1 at 45; Defendant's Response to Court Interrogatory, docket #150 at 1.

18. Lisa Gregory is employed by the Federal Bureau of Prisons and has been a Health Services Administrator for the North Central Region since January 2010. Declaration of Lisa Gregory, December 3, 2014 ("Gregory Declaration"), ¶ 1, docket #117-1.

19. In her position, Gregory does not have decision-making authority to approve or deny medical requests for consults or surgery. *Id.*, ¶ 6.

20.     Gregory neither reviewed the Plaintiff's medical records in response to a request for surgery nor denied the Plaintiff medical care. *Id.*, ¶ 7.

21.     On February 25, 2013, Plaintiff was seen by G. Santini, M.D. for a follow-up Chronic Care evaluation. BOP Health Services Clinical Encounter, February 25, 2013, docket #88-1 at 46-48. Dr. Santini noted that the ophthalmology exam was "rejected from region 11/12." *Id.* at 48. The doctor referred Plaintiff for another optometry exam to "re-evaluate." *Id.*

22.     On March 13, 2013, Dr. Clough saw the Plaintiff again for "re-evaluation of cataract status." BOP Health Services Clinical Encounter, March 13, 2013, 2013, docket #88-1 at 49-52. Plaintiff reported "continued decreased vision at distance and near with current bifocals due to advancing cataract formation." *Id.* at 49. Dr. Clough concluded Plaintiff had "posterior subcapsular polar cataract 366.02 - current, chronic, worsened," and informed Plaintiff that "updating spectacle correction will not provide great improvement in visual acuity and that a cataract evaluation with IOL is best treatment at this time." *Id.* at 50.

23.     Dr. Clough submitted another consultation request to the URC for the Plaintiff to see an ophthalmologist. BOP Health Services Consultation Request, March 13, 2013, docket #88-1 at 53-55.

24.     On April 18, 2013, the URC favorably referred Plaintiff's ophthalmology consultation request to the North Central Regional Medical Director for final approval. Kellar Declaration, ¶ 11, docket #88-2; *see also* BOP Health Services Consultation Request, March 13, 2013, docket #88-1 at 55; URC Inmate Notification Letter, April 18, 2013, docket #88-1 at 56.

25.     The Regional Medical Director approved the ophthalmology consultation for the Plaintiff on May 2, 2013. BOP Health Services Consultation Request, March 13, 2013, docket #88-1 at 55.

26.     On June 18, 2013, Plaintiff sought information from B. Vaughn, MRAS as to whether the consultation had been approved. Inmate Request to Staff, June 18, 2013, docket #88-1 at 57. B. Vaughn confirmed that the request was approved and Plaintiff was "on the list of inmates to be scheduled." *Id.*

27.     On August 14, 2013, Plaintiff saw Anak K. Shrestha, M.D. at the Rocky Mountain Eye Center in Canon City for the consultation. Rocky Mountain Eye Care Center, Inc. Medical Record, August 14, 2013, docket #88-1 at 58-61. Dr. Shrestha recommended cataract extraction to improve the Plaintiff's eyesight, which would not be improved with "changing glasses." *Id.* at 61.

28.     On August 30, 2013, Dr. Clough completed an administrative note for the Plaintiff entitled "Ophthalmological cataract surgery consultation approval for treatment and intervention," stating,

> Ophthalmological consultation for bilateral cataract extraction performed with consulting surgeon on 08/14/2013 with concurring of cataract diagnosis and recommendation for surgical intervention with intraocular lens implants. URC to review case in September 2013 to proceed and authorize surgical procedure. Cataract extraction postoperative care to be completed by Dr. Clough at FCC.

BOP Health Services Clinical Encounter - Administrative Note, August 30, 2013, docket #88-1 at 64.

29.     On September 19, 2013, the URC notified Plaintiff that the request for cataract surgery had been referred to the Regional Office for final approval. URC Inmate Notification Letter, September 19, 2013, docket #88-1 at 68.

30.     On October 4, 2013, Dr. Clough completed another administrative note for the Plaintiff entitled, "Re-submittal of Ophthalmology Consultation Report for cataract evaluation and surgical procedure with intraocular lens implant." BOP Health Services Clinical Encounter - Administrative Note, October 4, 2013, docket #88-1 at 62-63. Dr. Clough also completed a Consultation Request

for Ophthalmology stating as the Reason for Request:

> Inmate reports decreased visual acuity at distance and near with developing bilateral cataract formation. Best corrected visual acuity at 20' is right eye: 20/60+2 and left eye: 20/80+1. Cataract formation on clinical observation indicates right eye: 1+ nuclear sclerotic cataract along with a 2+ posterior subcapsular cataract and left eye: 1+ nuclear sclerotic cataract and 3+ posterior subcapsular cataract. Based on best corrected visual acuity, inmate meets BOP ophthalmology (2007 Guidelines) cataract surgery criteria. Inmate was evaluated by outside cataract surgeon on August 14, 2013 with concurring findings and recommendation for cataract surgery with implant. Recommendation made by me initially indicated cataract surgery on left eye due to more severity in vision loss when compared to right eye.
>
> Inmate to now be referred to Dr. Paul Rastrelli at Rocky Mountain Eye Center in Pueblo, Colorado for evaluation and intra-ocular lens implant in left eye. Inmate will return to FCC Florence for all post-operative care to completed by Dr. Steven Clough. All necessary information garnered for this recommendation taken from last comprehensive eye examination on March 03, 2013 at FCC Florence.

*Id.*; *see also* BOP Health Services Consultation Request, October 4, 2013, docket #88-2 at 22-24.

31.  On October 21, 2013, Plaintiff sought information from B. Vaughn, MRAS as to whether his "ophthalmology case" had been approved by the Regional office. Inmate Request to Staff, October 21, 2013, docket #88-1 at 67. B. Vaugh responded on October 24 stating, "From what I understand, Region approved this case. Your surgery is pending scheduling priority at this time." *Id.*

## LEGAL STANDARDS

### I.  Treatment of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably

11

read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## II.   Dismissal under Fed. R. Civ. P. 56

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

### I.     Sovereign Immunity

Gregory, in her official capacity, enjoys sovereign immunity from Plaintiff's *Bivens* action. *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP."); *Hatten v. White*, 275

F.3d 1208, 1210 (10th Cir. 2002) ("A *Bivens* action may not be brought against federal agencies or agents acting in their official capacities."). Sovereign immunity removes a court's jurisdiction over a complaint. *See Governor of Kan. v. Kempthorne*, 516 F.3d 833, 846 (10th Cir. 2008) (noting "the strict jurisdictional nature of sovereign immunity"). This Court, therefore, lacks jurisdiction over Plaintiff's *Bivens* claims against Gregory in her official capacity. Accordingly, Plaintiff's *Bivens* claims for monetary damages should be dismissed for lack of subject matter jurisdiction.

However, in addition to monetary damages, Plaintiff appears to seek injunctive relief against Gregory to provide the requested cataract surgery. Federal prisoners may seek injunctive relief against federal prison officials in their official capacities from alleged constitutional violations. *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233, 1236 (10th Cir. 2005); *accord Malesko*, 534 U.S. at 74 (federal inmate who may not assert *Bivens* claim for damages against private prison contractor may bring suit in federal court for injunctive relief). Plaintiff does not specifically state that he is suing the individual Defendants in their official capacities in the Amended Complaint (docket #39); however, because he seeks injunctive relief, the Court construes the Amended Complaint liberally to include official capacity claims. *See, e.g., Fenner v. Suthers*, 194 F. Supp. 2d 1146, 1149 (D. Colo. 2002) (noting that "plaintiff's complaint ... seeks injunctive relief and is thus readily construed as a suit against defendants in their official capacities").

Therefore, to obtain his requested injunctive relief, the Plaintiff must demonstrate there are genuine issues of material fact as to whether Gregory violated his Eighth Amendment rights.

## II.     Qualified Immunity

Gregory asserts that she is entitled to qualified immunity for the Eighth Amendment claim against her in her individual capacity. Qualified immunity protects from litigation a public official

whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009)).

The Supreme Court has discarded a review process that required courts to examine the elements of qualified immunity sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 232-44. *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

In this case, the Court will begin by analyzing Plaintiff's claim against Gregory to determine whether Plaintiff has established genuine issues of material fact as to a violation of his Eighth Amendment right; if so, the Court will proceed to determine whether Plaintiff's right was clearly established at the time of the violation.

Personal participation is an essential allegation in a civil rights action. *Green v. Hininger*, 557 F. App'x 773, 776 (10th Cir. 2014) (citing *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976)). "To establish *Bivens* liability, a plaintiff is required to bring forth evidence that an individual defendant directly and personally participated in the purported constitutional violation." *Persaud v. Doe*, 213 F. App'x 740, 743 (10th Cir. 2007) (citing *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003), *cert. denied*, 543 U.S. 925 (2004), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 921 (2007)). "A plaintiff must plead that each government-official defendant, though the official's own individual actions, has violated the Constitution." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013). In *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011), the Tenth Circuit noted that in a civil rights case asserting claims against individual government actors, "it is particularly important ... that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations" against an entire group of defendants.

Plaintiff alleges that Gregory "had all of the medical records of Plaintiff at her disposal when she was asked to approve the request for cataract surgery. ... Defendant Gregory was directly involved with the decision to deny treatment already prescribed and approved." Amended Complaint, docket #39 at 9. To properly rebut the present motion, the Plaintiff must show genuine issues of material fact as to whether there is an affirmative link between the alleged constitutional violation (delay or denial of cataract surgery) and Gregory's participation, control or direction, or failure to supervise.

Gregory attested on December 3, 2014 that she had no participation or direction in the

decision to deny Plaintiff's cataract surgery in November 2012. Gregory Declaration, ¶¶ 6, 7. Plaintiff subsequently sought discovery as to the individual responsible for denying his surgery in November 2012; at the Court's direction, Gregory provided the Plaintiff the following information on March 11, 2015[4]: "[o]n November 28, 2012, a non-North Central Regional Office medical provider, acting in the role of the regional reviewer, denied a consultation request for cataract surgery evaluation." Docket #150-1 at 1. Gregory cited to a document provided to the Plaintiff and the Court by former Defendant Kellar in support of his motion for summary judgment in February 2014, which is a BOP Health Services Consultation Request dated November 29, 2012. *See* docket #88-1 at 41-43. Page 3 of that document lists the actions taken with the request, including that it was "[d]isapproved by Gideon, Ruby RN, Regional Nurse Consultant acting in the role of Regional Review on 11/28/2012." *Id.* at 43. Gregory cites this same document and identifies Ruby Gideon in her certified response to the Court's request for identification of the individual responsible for denying the request for surgery in November 2012. Docket #150 at 1.

Notably, even after receiving Kellar's documents in support of his summary judgment motion in April 2014 and Gregory's March 11, 2015 discovery responses identifying Nurse Gideon as the individual who denied the surgery in November 2012 , the Plaintiff claimed on May 12, 2015 that the Defendants' information "left open a critical question as to which 'physician' was responsible for the refusal of Ervin's cataract surgery, and more particularly, which **Federal Bureau of Prisons North Central Regional Medical Director** was responsible for the refusal of Ervin's medically necessary cataract surgery." Plaintiff's Supplemental Response, docket #145 at 1

---

[4]As set forth above, Gregory did not provide this information to the Court until June 22, 2015, after she was ordered to do so. Docket #150.

(emphasis in original). Plaintiff concluded that he "is satisfied that his initial response to the summary judgment, and this supplement, is [sic] sufficient to establish for this Court that there is a genuine issue of material fact as to Defendant Gregory being a proper party. *Id.* at 3. After receiving copies of Gregory's discovery responses provided to the Plaintiff, the Court disagrees with him.

Considering the undisputed evidence here, the Court finds that Plaintiff has failed to demonstrate genuine issues of material fact as to whether Gregory participated in the decision to deny Plaintiff's cataract surgery in November 2012. Accordingly, the Court respectfully recommends that the District Court find Gregory is entitled to qualified immunity from Plaintiff's Eighth Amendment claim and grant the present motion for summary judgment as to the claim against Gregory in her individual and official capacities.

### III. Motion to Dismiss for Lack of Personal Jurisdiction

In light of the Court's recommendation to grant the motion for summary judgment, the Court need not address Gregory's motion to dismiss for lack of personal jurisdiction and will recommend denying it as moot. *Roscoe v. Hansen*, 107 F.3d 880, 1997 WL 116992 (10th Cir. 1997) (unpublished) (citing *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180 (1979)) ("Unlike subject matter jurisdiction, personal jurisdiction is not an 'absolute stricture' on a district court, but is instead a 'personal privilege' that may be waived by a defendant.").

## **CONCLUSION**

Accordingly, for the reasons stated above and based on the entire record herein, the Court respectfully RECOMMENDS that Defendant Gregory's Motion for Summary Judgment [filed December 11, 2014; docket #117] be **GRANTED** and the Motion to Dismiss [filed December 11,

2014; docket #116] be **DENIED AS MOOT**.

Dated at Denver, Colorado, this 1st day of July, 2015.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge